IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EMPLOYERS INSURANCE COMPANY OF WAUSAU, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:08-CV-44 |
| ALABAMA ELECTRIC COOPERATIVE, INC., | ) ) ) | |
| Defendant. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Employers Insurance Company of Wausau ("Wausau"), states for

its complaint for declaratory judgment against Defendant, Alabama Electric

Cooperative, Inc. ("AEC"), as follows:

**PARTIES**

1.     Wausau is a Wisconsin corporation with its principal place of business

in Wausau, Wisconsin.

2.     AEC is an Alabama corporation with its principal place of business in

Andalusia, Alabama.

3.     All parties named herein have or claim an interest which would be

affected by any declaration of rights and are subject to the personal jurisdiction of

the Court.

**JURISDICTION & VENUE**

4.      This is an action for declaratory relief brought pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure.

5.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332 as complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.      There is a real, substantial and justiciable controversy between the parties concerning the relationship between the parties regarding insurance coverage for the claims set out below.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because AEC resides in this judicial district.

**FACTS**

8.      Wausau issued a Commercial General Liability Policy ("the Policy") to AEC for the period April 1, 2002 through April 1, 2003. AEC is the first named insured on the policy. The Policy has a general aggregate limit of $2,000,000, a personal and advertising injury limit of $1,000,000, and per occurrence limit of $1,000,000.   A true and correct copy of the Policy is attached hereto as Exhibit A.

9.      On or about April 6, 2004, Bailey's Construction Company, Inc. ("Bailey's Construction") filed a counterclaim against AEC in a lawsuit styled *Alabama Electric Cooperative, Inc.; et al. v. QBE Insurance Corp.; et al.,*  No.

CV-03-027-B, in the Circuit Court of Washington County, Alabama ("the underlying litigation").

10.    Thereafter, Jack Bailey, president and owner of Bailey's Construction, intervened in the underlying litigation and brought separate, though similar, claims against AEC. Attached hereto as Exhibit B are the counterclaims brought by Bailey's Construction, with a May 31, 2007, amendment and Jack Bailey's Amended and Restated Intervenor Complaint filed May 30, 2007, in the underlying litigation.

11.    The claims brought by Bailey's Construction and Jack Bailey against AEC in the underlying litigation arise from AEC's alleged termination, effective January 31, 2003, of a contract with Bailey's Construction to haul gypsum from an AEC facility. Bailey's Construction and/or Jack Bailey brought claims against AEC for breach of contract, fraudulent misrepresentation, failure to disclose/fraudulent suppression, malicious prosecution, abuse of process, slander, work and labor done, unjust enrichment and conspiracy. On January 16, 2007, the slander claims were dismissed in the underlying litigation.

12.    AEC has made a claim on Wausau for defense and indemnity for the claims brought against AEC in the underlying litigation.

13.    The Policy provides, in part, coverage for those sums the insured becomes legally obligated to pay as damages because of "bodily injury," property damage," and "personal and advertising injury," which are not otherwise excluded.

3

The Insuring Agreement under Coverage A – Bodily Injury and Property Damage

Liability in the Policy provides:

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

    **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A and B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If

such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

14.    The Insuring Agreement under Coverage B – Personal and

Advertising Injury Liability in the Policy provides:

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)    The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A and B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

5

15.    "Occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

16.    The Policy defines "bodily injury" as "bodily injury, sickness, disease, mental injury, mental anguish, shock or fright sustained by a person, including death resulting from any of these at any time; but 'bodily injury' does not include injury arising out of any of the offenses designated in the definition of 'personal and advertising injury.'"

17.    The Policy defines "Property damage" as:

**a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

**b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18.    "Personal and advertising injury" means "injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.**    False, arrest, detention or imprisonment;

**b.**    Malicious prosecution;

**c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.**    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.**    Written or oral publication, in any manner, of material that violates a person's right or privacy;

**f.**    The use of another's advertising idea in your "advertisement"; or

**g.**    Infringing upon another's copyright, trade dress or slogan in your "advertisement."

19.    Wausau has provided a defense to AEC against the claims of Bailey's Construction and Jack Bailey in the underlying litigation subject to a reservation of rights.

20.    Based upon the claims asserted in the underlying litigation and the Policy's terms and provisions, there exists an actual justiciable controversy as to whether coverage would exist for all or some of the claims asserted against AEC in the underlying litigation or whether coverage is excluded under Alabama law and the applicable language in the Policy.

21.    Absent a declaration of its rights and obligations with respect to the Policy, Wausau will be exposed to substantial and irreparable injury and

uncertainty, all of which can be avoided through a judicial declaration of its rights as requested herein.

**WHEREFORE**, Wausau respectfully requests that, upon a final hearing of this case, the Court:

1.    Enter a judgment declaring the rights, duties, and other legal relations between Wausau and AEC under the Policy with respect to the claims asserted against AEC in the underlying litigation and declare whether and to what extent Wausau owes a duty to defend or indemnify AEC under the Policy with regard to the claims asserted against AEC; and

2.    Order such other and further relief as the Court may deem just and proper, including the costs and disbursements of this action.

_____
Attorney for Plaintiff
Employers Insurance Co. of Wausau

OF COUNSEL:

William H. Brooks (BROOW3330)
*wbrooks@lightfootlaw.com*
Wesley B. Gilchrist (GILCW4083)
*wgilchrist@lightfootlaw.com*
**LIGHTFOOT, FRANKLIN & WHITE, L.L.C.**
400 North 20th Street
Birmingham, Alabama 35203
Telephone (205) 581-0700
Facsimile (205) 581-0799

**PLEASE SERVE THE DEFENDANT VIA CERTIFIED MAIL TO:**

Alabama Electric Cooperative, Inc.
c/o J. Theodore Jackson, Jr.
184 Commerce Street
Montgomery, AL  36104

# EXHIBIT A

## Common Policy Declarations

Policy number TZC-Y91-526237-042

Former Policy Number(s)

14 22-07-O20022

Producer
002189

Named Insured and Mailing Address
ALABAMA ELECTRIC COOPERATIVE INC.
PO BOX 550
ANDALUSIA AL 36420

Form of Business
CORPORATION

Premium Will Be Billed
MONTHLY

Assn  417

Policy Period:    O4-O1-2002    to    O4-O1-2003          at 12:01 A.M. standard time at above mailing address

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGES | PREMIUM |
|---|---|
| COMMERCIAL GENERAL LIABILITY - OCCURRENCE | $    193.778 |
| Total Premium | $    193.778 |

Issued by:
EMPLOYERS INSURANCE COMPANY OF WAUSAU
PO Box 8017
WAUSAU WISCONSIN 54402-8017

Countersigned By

Forms Applicable: See Attached Inventory

Authorized Company Representative

Issued: O5-23-O2

IC0002
11-98

**Common Policy Declarations (Continued)**

Policy number  TZC-Y91-526237-042

The following information, required by state regulation, is hereby affixed to the Common Policy Declarations page of your policy:

IC0002
11-98

# Employers Insurance Company of Wausau

(A Stock Insurance Company)

HOME OFFICE: WAUSAU, WISCONSIN

While this policy is in effect, you are a member of Liberty Mutual Holding Company Inc. and are entitled to vote either in person or by proxy at any and all meetings of said company. The Annual Meeting of Liberty Mutual Holding Company Inc. is in Boston, Massachusetts, on the second Wednesday in April each year at ten o'clock in the morning.

You shall participate in the distribution of surplus funds of the company through any dividends that may be declared for this Policy. The amount of any dividends that may be declared shall be to the extent, and upon the conditions fixed and determined by the Board of Directors and in compliance with any laws that apply.

IN WITNESS WHEREOF, the company has caused this policy to be signed by its President and its Secretary in Wausau, Wisconsin and countersigned on the Declarations Page by a duly authorized representative of the company.

Secretary

President

## Inventory
## Coverage Forms/Parts-Endorsements-Enclosures

COVERAGE FORMS/PARTS AND ENDORSEMENTS FORMING A PART OF THIS POLICY AT INCEPTION:

| Form Number | Edition Date | Title |
|---|---|---|
| IC0002 | 11-98 | COMMON POLICY DECLARATIONS |
| IC0001 | 10-91 | INVENTORY |
| IL 00 17 11 98 | 11-98 | COMMON POLICY CONDITIONS |
| IC0018 | 04-92 | COUNTERSIGNATURE - FL |
| IC0203 | 08-00 | CANCELLATION BY THE COMPANY |
| IL 00 21 04 98 | 04-98 | NUCLEAR ENERGY LIABILITY EXCLUSION |
| GL2000 | 10-01 | ADDITIONAL NAMED INSURED |
| GL0001 | 07-99 | CGL DECLARATIONS-OCCURRENCE |
| GL0075 | 01-92 | GENERAL LIABILITY SCHEDULE |
| GL0060 | 07-98 | QUICK REFERENCE CGL - OCCURRENCE |
| CG 00 01 10 01 | 10-01 | CGL COVERAGE FORM |

ADDITIONAL INSURED

| | | |
|---|---|---|
| CG 20 26 11 85 | 11-85 | ADDL INSD-DES PERS/ORGANIZATION |

ADDITIONAL INSURED - OTHER

| | | |
|---|---|---|
| CG 20 02 11 85 | 11-85 | ADDITIONAL INSURED (CLUB MEMBERS) |

ADDITIONAL COVERAGES

| | | |
|---|---|---|
| CG 04 35 10 01 | 10-01 | EMPLOYEE BENEFITS |
| GL0408 | 10-01 | FELLOW EMPLOYEE - BI (OFFICERS, ETC.) |
| GL2422 | 03-00 | BODILY INJURY REDEFINED |

EXCLUSIONS

| | | |
|---|---|---|
| BL2215 | 03-95 | ELECTROMAGNETIC RADIATION EXCLUSION |
| CG 21 47 07 98 | 07-98 | EMPLOYMENT-RELATED PRACTICES EXCL |
| CG 21 50 09 89 | 09-89 | AMENDMENT OF LIQUOR LIABILITY EXCLUSION |
| CG 21 60 09 98 | 09-98 | EXCL-YR 2000 COMPUTER-RELATED PROBLEMS |
| CG 22 27 11 85 | 11-85 | EXCL-BODILY INJURY TO RAILROAD PASSENGER |
| GL2114 | 10-01 | ABUSE OR MOLESTATION EXCLUSION |
| GL2121 | 03-92 | SPECIFIC CORP/SUBSIDIARY/DIVISION EXCL |
| GL2154 | 10-01 | COMPUTER VIRUS EXCLUSION |
| GL2209 | 09-89 | EXCL-ELECTRICAL UTILITIES FAIL TO SUPPLY |

OTHER

| | | |
|---|---|---|
| BL7704 | 05-01 | REIMBURSEMENT |
| CG 22 63 01 96 | 01-96 | STEVEDORING - LIMITED COMP OPER COV |
| CG 24 12 11 85 | 11-85 | BOATS |
| GL2403 | 10-01 | MEDICAL PAYMENTS COVERAGE AMENDMENT |
| GL9906 | 10-93 | COMPOSITE RATE (WC REMUNERATION) |

NOTICES

| | | |
|---|---|---|
| ST2000 | 03-87 | IMPORTANT NOTICE TO POLICYHOLDERS |
| ST2029 | 10-01 | NOTICE TO POLICYHOLDERS |
| ST9004 | 12-00 | NOTICE TO FL POLICYHOLDERS |

## Common Policy Conditions

All Coverage Parts included in this policy are subject to the following conditions:

### A. CANCELLATION

1. The First Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### D. INSPECTIONS AND SURVEYS

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

Copyright, Insurance Services Office, Inc., 1998

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do **not** make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the **health** or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any **rating**, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

    1. Is responsible for the payment of all premiums; and

    2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Policy number  TZC-Y91-526237-042

This endorsement is effective    04-01-02     and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## Countersignature Endorsement

This endorsement is effective at the inception of the policy and attaches to and forms a part of this policy.

Type of Insurance                                                                State

COMMERCIAL  GENERAL  LIABILITY  -  OCCURRENCE                   Florida

Signed by _____
                                Countersigning Agent

Policy number TZC-Y91-526237-042

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Cancellation by the Company Endorsement

The Cancellation condition of the policy is changed to provide that, with respect to cancellation by us for any reason other than nonpayment of premium, we will mail or deliver to you written notice of cancellation at least 90 days before the effective date of cancellation, but in no event less than the number of days required by applicable statute or rule.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Nuclear Energy Liability Exclusion Endorsement (Broad Form)

This endorsement modifies insurance provided under the following coverage parts or coverage forms if the particular coverage part or coverage form has been made a part of the policy:

> BUSINESSOWNERS POLICY
> COMMERCIAL AUTO COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK DEPARTMENT OF
>     TRANSPORTATION
> COMMERCIAL UMBRELLA LIABILITY POLICY

1.  The insurance does not apply:

   A.  Under any Liability Coverage, to "bodily injury" or "property damage:"

      (1)  With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2)  Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B.  Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C.  Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

Copyright, Insurance Services Office, Inc., 1997

(1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured;" or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material," "special nuclear material" or "by-product material;"

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Additional Named Insured Endorsement

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Throughout this policy, the words "you" and "your" also refer to each additional named insured listed in the schedule of this endorsement. The following provisions also apply:

1.  Paragraph 1. of Section II - WHO IS AN INSURED is deleted and replaced by the following:

    1.  If you are designated in the Declarations or this endorsement as:

        a.  An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

        b.  A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

        c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

        d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

        e.  A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2.  The named insured shown in the Declarations is authorized to act for each additional named insured listed in all matters pertaining to this insurance including, but not limited to, receipt of:

    a.  Notice of cancellation;

    b.  Any returned premium;

    c.  Any dividends which we may declare.

3.  The named insured shown in the Declarations will pay the premium for the insurance afforded each additional named insured listed in accordance with the manual rules we use; provided that in the event of bankruptcy or insolvency of the named insured shown in the Declarations, each additional named insured will be responsible for and will pay us the premium for the insurance afforded respectively to each such additional named insured.

4.  Coverage A does not apply to "bodily injury" or "property damage" that occurred before the named insured acquired or formed the additional named insured listed.

5.  Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before the named insured acquired or formed the additional named insured listed.

6.  This endorsement is being placed on the policy only because the named insured shown in the Declarations has told us that it and the additional named insured's interest listed are owned or financially controlled by the same interest.

## Schedule

| Names of Additional Named Insured | Form of Business |
|---|---|
| ALABAMA ELECTRIC COOPERATIVE, INC. | CORPORATION |
| ANDALUSIA AND CONECUH RAILROAD COMPANY, INC. | CORPORATION |
| COOPERATIVE PROPANE | CORPORATION |
| COOPERATIVE SERVICES, INC. | CORPORATION |
| POWERSOUTH DEVELOPMENT CORP. | CORPORATION |

# Wausau Insurance Companies
## Commercial General Liability Declarations
### Occurrence

Policy number
TZC-Y91-526237-042
Named Insured
ALABAMA ELECTRIC COOPERATIVE INC.

## THIS OCCURRENCE POLICY ALSO CONTAINS CLAIMS MADE COVERAGE

LIMITS OF INSURANCE

| | |
|---|---|
| GENERAL AGGREGATE LIMIT (Other Than Products - Completed Operations) | $ 2,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ 2,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 1,000,000 |
| EACH OCCURRENCE LIMIT | $ 1,000,000 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT (ANY ONE PREM) | $ 100,000 |
| MEDICAL EXPENSE LIMIT (ANY ONE PERSON) | $ 5,000 |

See Attached Schedules

| | Advance Premium |
|---|---|
| Commercial General Liability Coverage Part | $ 193,778 |
| Total Premium | $ 193,778 |

GL0001
07-99

Issued: 05-23-02

**General Liability Schedule**

Policy number TZC-Y91-526237-042                    Schedule number  00001

---

| Class Code | Premium Basis | Rates | Premium |
|---|---|---|---|
| --COMPOSITE RATED COVERAGES-- | | | |
| 98550 | WC REMUNERATION PER 100 | | |
| NOT OTHERWISE CLASSIFIED AND/OR A-RATED | | | |
| Products-Completed Operations | 16,892,838 | .0001 | 17 |
| All Other | 16,892,838 | 1.147 | 193,761 |

**QUICK REFERENCE**

## Commercial General Liability Coverage Part

### Occurrence

**READ YOUR POLICY CAREFULLY**

SECTION I - COVERAGES

COVERAGE A - Bodily Injury and Property Damage Liability
Insuring Agreement
Exclusions

COVERAGE B - Personal and Advertising Injury Liability
Insuring Agreement
Exclusions

COVERAGE C - Medical Payments
Insuring Agreement
Exclusions

Supplementary Payments - Coverages A and B

SECTION II - WHO IS AN INSURED

SECTION III - LIMITS OF INSURANCE

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

Bankruptcy
Duties In the Event of Occurrence, Offense, Claim or Suit
Legal Action Against Us
Other Insurance
Premium Audit
Representations
Separation of Insureds
Transfer of Rights of Recovery Against Others To Us
When We Do Not Renew

SECTION V - DEFINITIONS

## Commercial General Liability Coverage Form

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

### SECTION I - COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1)  The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

        (2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2)  The "bodily injury" or "property damage" occurs during the policy period; and

        (3)  Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

ISO Properties, Inc., 2000

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II- Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

         (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

         (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

   c. **Liquor Liability**

      "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

      (1) Causing or contributing to the intoxication of any person;

      (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire;"

(b) At or from any premises site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i)  Any insured; or

(ii) Any person or organization for whom you may be legally responsible for; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i)  "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operation fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g.  **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided that "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h.  Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i.  War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j.  Damage to Property

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products/completed operations hazard."

k.   **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l.   **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products/completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.   **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)  A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)  A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n.   **Recall Of Products, Work Or Impaired Property**

Damages claimed for loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)  "Your product";

(2)  "Your work"; or

(3)  "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o.   **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury."

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

        (1)  The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

        (2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

    b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2.  **Exclusions**

    This insurance does not apply to:

    a.  **Knowing Violation Of Rights Of Another**

        "Personal and adverting injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

    b.  **Material Published With Knowledge Of Falsity**

        "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

    c.  **Material Published Prior To Policy Period**

        "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

    d.  **Criminal Acts**

        "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

    e.  **Contractual Liability**

        "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f.  **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g.  **Quality Or Performance Of Goods - Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h.  **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i.  **Infringement Of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j.  **Insureds In Media and Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1)  Advertising, broadcasting, publishing or telecasting;

(2)  Designing or determining content of websites for others; or

(3)  An Internet search, access, content or service provider.

However, this exclusion does not apply to paragraphs 14.a., b. and c. of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k.  **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l.  **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m.  **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; **or**

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

## COVERAGE C MEDICAL PAYMENTS

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused **by** an accident:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations;

      provided that:

      (1) The accident takes place in the "coverage territory" and during the policy period;

      (2) The expenses are incurred and reported to us within one year of the date of the accident; and

      (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

      (1) First aid administered at the time of an accident;

      (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury:"

   a. **Any Insured**

      To any insured, except "volunteer workers."

   b. **Hired Person**

      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c.  **Injury On Normally Occupied Premises**

   To a person injured on that part of premises you own or rent that the person normally occupies.

d.  **Workers Compensation And Similar Laws**

   To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e.  **Athletic Activities**

   To a person injured while taking part in athletics.

f.  **Products-Completed Operations Hazard**

   Included within the "products-completed operations hazard."

g.  **Coverage A Exclusions**

   Excluded under Coverage A.

h.  **War**

   Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1.  We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a.  All expenses we incur.

   b.  Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

   e.  All costs taxed against the insured in the "suit".

   f.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2.  If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee: and

(2) Provides us with written authorization to: .

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I - Coverage A - Bodily Injury and Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e.  A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2.  Each of the following is also an insured:

a.  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

   (1)  "Bodily injury" or "personal and advertising injury":

       (a)  To you, to your partners or members (if you are a partnership or joint venture), to your members(if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

       (b)  To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

       (c)  For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

       (d)  Arising out of his or her providing or failing to provide professional health care services.

   (2)  "Property damage" to property:

       (a)  Owned, occupied or used by,

       (b)  Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

       you, any of your "employees," "volunteer workers," any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b.  Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c.  Any person or organization having proper temporary custody of your property if you die, but only:

   (1)  With respect to liability arising out of the maintenance or use of that property; and

   (2)  Until your legal representative has been appointed.

d.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3.  With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

    a.  "Bodily injury" to a co-"employee" of the person driving the equipment; or

    b.  "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

    b.  Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    c.  Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.  Insureds;

    b.  Claims made or "suits" brought; or

    c.  Persons or organizations making claims or bringing "suits".

2.  The General Aggregate Limit is the most we will pay for the sum of:

    a.  Medical expenses under Coverage C;

    b.  Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products/completed operations hazard"; and

    c.  Damages under Coverage B.

3.  The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4.  Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5.  Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    a.  Damages under Coverage A; and

    b.  Medical expenses under Coverage C

    because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6.  Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7.  Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1.  **Bankruptcy**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligation under this Coverage Part.

2.  **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1)  How, when and where the "occurrence" or offense took place;

        (2)  The names and addresses of any injured persons and witnesses; and

        (3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b.  If a claim is made or "suit" is brought against any insured, you must:

        (1)  Immediately record the specifics of the claim or "suit" and the date received; and

        (2)  Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.  You and any other involved insured must:

        (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        (2)  Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

   (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

   (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

   (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I - Coverage A - Bodily Injury and Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c.  Method of Sharing

If all the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit**

a.  We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b.  Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess for the first Named Insured.

c.  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

By accepting this policy, you agree:

a.  The statements in the Declarations are accurate and complete;

b.  Those statements are based upon representations you made to us; and

c.  We have issued this policy in reliance upon your representations.

7. **Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communications; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories or possessions), Puerto Rico and Canada;

   b. International water or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5.   "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6.   "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7.   "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8.   "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a.   It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b.   You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a.   The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b.   Your fulfilling the terms of the contract or agreement.

9.   "Insured contract" means:

   a.   A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damages by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b.   A sidetrack agreement;

   c.   Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d.   An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e.   An elevator maintenance agreement;

   f.   That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

11. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanent mounted:

        (1) Power cranes, shovels, loaders, diggers or drills; or

        (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    (1) Equipment designed primarily for:

        (a) Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right or privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

15. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   **(1)** Products that are still in your physical possession; or

   **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **(a)** When all of the work called for in your contract has been completed.

      **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.  Does not include "bodily injury" or "property damage" arising out of:

(1)  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured.

(2)  The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3)  Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17.  "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18.  "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19.  "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20.  "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21.  "Your product":

a.  Means:

(1)  Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a)  You;

(b)  Others trading under your name; or

(c)  A person or organization whose business or assets you have acquired; and

CG 00 01 10 01
10-01

Page 21
See next page

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work:"

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

Policy number TZC-Y91-5262370042

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Additional Insured Endorsement
## (Designated Person or Organization)

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

**Schedule**

Name of Person or Organization

OLIN CORPORATION

CSX TRANSPORTATION, INC.

ALABAMA POWER COMPANY

RESOURCE MANAGEMENT SERVICE, INC.

Copyright, Insurance Services Office, Inc., 1984

CG 20 26 11 85                                                                 Page 1 of 1
11-85

Policy number TZC-Y91-526237-042

This endorsement is effective   04-01-02     and will terminate with the policy. It is issued by the  company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Additional Insured Endorsement
## (Club Members)

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

WHO IS AN INSURED (Section II) is amended to include as an insured any of your members, but only with respect to their liability for your activities or activities they perform on your behalf.

Copyright, Insurance Services Office. Inc., 1984

Issued: 05-23-02

CG 20 02 11 85
11-85

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# Employee Benefits Liability Coverage

### THIS ENDORSEMENT PROVIDES CLAIMS - MADE COVERAGE. PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Schedule**

| Coverage | Limit Of Insurance | |
|---|---|---|
| Employee Benefits Program | $1,000,000 | each employee |
| | $2,000,000 | aggregate |

Deductible

$SEE ENDORSEMENT BL 7704          each employee

Retroactive Date: THE FIRST DATE THIS COVERAGE WAS
PURCHASED FROM ANY COMPANY IN THE
WAUSAU INSURANCE COMPANIES GROUP

A. The following is added to Section I – Coverages:

### COVERAGE – EMPLOYEE BENEFITS LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Paragraph E. (Section III – Limits Of Insurance); and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   b. This insurance applies to damages only if:

© ISO Properties, Inc., 2000

(1) The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

(2) The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

(3) A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph c. below, during the policy period or an Extended Reporting Period we provide under Paragraph G. of this endorsement.

c. A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

(1) When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

(2) When we make settlement in accordance with Paragraph 1.a. above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

d. All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

2. Exclusions

This insurance does not apply to:

a. Dishonest, Fraudulent, Criminal Or Malicious Act

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

b. Bodily Injury, Property Damage, Or Personal And Advertising Injury

"Bodily injury", "property damage" or "personal and advertising injury".

c. Failure To Perform A Contract

Damages arising out of failure of performance of contract by any insurer.

d. Insufficiency Of Funds

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation

Any "claim" based upon:

(1) Failure of any investment to perform;

(2) Errors in providing information on past performance of investment vehicles; or

(3) Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

f.  Workers' Compensation And Similar Laws

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

g.  ERISA

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

h.  Available Benefits

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

i.  Taxes, Fines Or Penalties

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

j.  Employment-Related Practices

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

B.  For the purposes of the coverage provided by this endorsement:

1.  All references to Supplementary Payments – Coverages A and B are replaced by Supplementary Payments – Coverages A, B and Employee Benefits Liability.

2.  Paragraphs 1.b. and 2. of the Supplementary Payments provision do not apply.

C.  For the purposes of the coverage provided by this endorsement, Paragraphs 2. and 4. of Section II – Who Is An Insured are replaced by the following:

2.  Each of the following is also an insured:

a.  Each of your "employees" who is or was authorized to administer your "employee benefit program".

b.  Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

c.  Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

4.  Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

a.  Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

b.  Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

D.  For the purposes of the coverage provided by this endorsement, Paragraph 3. of Section II – Who Is An Insured does not apply.

E.  For the purposes of the coverage provided by this endorsement, Section III – **Limits Of Insurance** is replaced by the following:

1.  **Limits Of Insurance**

    a.  The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

        (1)  Insureds;

        (2)  "Claims" made or "suits" brought;

        (3)  Persons or organizations making "claims" or bringing "suits";

        (4)  Acts, errors or omissions; or

        (5)  Benefits included in your "employee benefit program".

    b.  The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" or your "employee benefit program".

    c.  Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

        (1)  An act, error or omission; or

        (2)  A series of related acts, errors or omissions

        negligently committed in the "administration" of your "employee benefit program".

        However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

    The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

2.  **Deductible**

    a.  Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

    b.  The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

    c.  The terms of this insurance, including those with respect to:

        (1)  Our right and duty to defend any "suits" seeking those damages; and

        (2)  Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim" apply irrespective of the application of the deductible amount.

d.  We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

F.  For the purposes of the coverage provided by this endorsement, Conditions 2. and 4. of Section IV – Conditions are replaced by the following:

2.  **Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

a.  You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

(1)  What the act, error or omission was and when it occurred; and

(2)  The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

b.  If a "claim" is made or "suit" is brought against any insured, you must:

(1)  Immediately record the specifics of the "claim" or "suit" and the date received; and

(2)  Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

c.  You and any other involved insured must:

(1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

(2)  Authorize us to obtain records and other information;

(3)  Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

(4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

4.  **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

a.  **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b.  **Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1)  That is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

(a)  No Retroactive Date is shown in the Schedule of this insurance; or

CG 04 35 10 01
10-01

**(b)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance of all insurers.

**G.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

1. You will have the right to purchase an Extended Reporting Period, as described below, if:

   a. This endorsement is canceled or not renewed; or

   b. We renew or replace this endorsement with insurance that:

      (1) Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

      (2) Does not apply to an act, error or omission on a claims-made basis.

2. The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

3. An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

   You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

   a. The "employee benefit programs" insured;

   b. Previous types and amounts of insurance;

   c. Limits of insurance available under this endorsement for future payment of damages; and

d.  Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

4.  If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph E.1.b. of this endorsement will be amended accordingly. The Each Employee Limit shown in the Declarations will then continue to apply as set forth in Paragraph E.1.c.

H.  For the purposes of the coverage provided by this endorsement, the following definitions are added to the Definitions Section:

1.  "Administration" means:

a.  Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

b.  Handling records in connection with the "employee benefit program"; or

c.  Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

2.  "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

3.  "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

4.  "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

a.  Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

b.  Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

c.  Unemployment insurance, social security benefits, workers' compensation and disability benefits;

d.  Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

e.  Any other similar benefits designated in the Schedule or added thereto by endorsement.

CG 04 35 10 01
10-01

I.  For the purposes of the coverage provided by this endorsement, Definitions 5. and 18. in the Definitions Section are replaced by the following:

5.  "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

18.  "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Fellow Employee Coverage Endorsement
### (Officers/Managers/Supervisors/Foremen)

THIS ENDORSEMENT DOES NOT APPLY IN THE STATE OF CONNECTICUT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Paragraph 2.a. of SECTION II - WHO IS AN INSURED is deleted and replaced by the following:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees" other than either your "executive officers", (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insured for:

   (1) "Bodily injury" or "personal and advertising injury":

      (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

      (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

      (d) Arising out of his or her providing or failing to provide professional health care services.

      Subparagraphs (a) and (b) do not apply to your officers, managers, supervisors and foremen with respect to "bodily injury" to a co-"employee."

   (2) "Property damage" to property:

      (a) Owned, occupied or used by;

      (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

      you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

B. With respect to officers, managers, supervisors or foremen only, Paragraph 3. of SECTION II - WHO IS AN INSURED is deleted and replaced by the following:

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to "property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

C. The insurance afforded by this endorsement to your officers, managers, supervisors and foremen for "bodily injury" to a co-"employee" shall not apply if the injured co-"employee's" exclusive remedy for such injury is provided under a workers compensation law or any similar law.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## "Bodily Injury" Redefined Endorsement

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph 3. of SECTION V - DEFINITIONS is deleted and replaced by the following:

3.  "Bodily injury" means bodily injury, sickness, disease, mental injury, mental anguish, shock or fright sustained by a person, including death resulting from any of these at any time; but "bodily injury" does not include injury arising out of any of the offenses designated in the definition of "personal and advertising injury."

Policy number TZC-Y91-526237-042

This endorsement is effective   04-01-02    and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Electromagnetic Radiation Exclusion Endorsement

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to any liability arising out of electromagnetic radiation.

Electromagnetic radiation includes, but is not limited to magnetic energy, waves, fields or forces generated, produced, distributed, transmitted or maintained by the charges, currents, frequencies, energy or forces of electricity that are generated, flow or otherwise transmitted through or via the medium, methods and equipment that generate, produce, distribute, transport, transmit or store the electrical charges, currents, frequencies, energy or forces.

The coverage afforded by this policy does not apply to payment for the investigation or defense of any loss, injury or damage or any cost, fine or penalty or for any expense or claim or "suit" related to any of the above.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Employment-Related Practices Exclusion

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2., Exclusions of SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

Copyright, Insurance Services Office, Inc., 1997

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Policy number  TZC-Y91-526237-042

This endorsement is effective     04-01-02      and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Amendment of Liquor Liability Exclusion Endorsement

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion c. of COVERAGE A (Section I) is replaced by the following:

c.  "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

   (1) Causing or contributing to the intoxication of any person;

   (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

   (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

   This exclusion applies only if you:

   (1) Manufacture, sell or distribute alcoholic beverages;

   (2) Serve or furnish alcoholic beverages for a charge whether or not such activity:

      (a) Requires a license;

      (b) Is for the purpose of financial gain or livelihood; or

   (3) Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

Copyright, Insurance Services Office, Inc., 1988

Issued: 05-23-02

Policy number  TZC-Y91-526237-042

This endorsement is effective    04-01-02    and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Exclusion - Year 2000 Computer-Related and Other Electronic Problems

This endorsement modified insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage **A** - Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability.

**2. Exclusions**

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" (or "personal and advertising injury" if defined as such in your policy) arising directly or indirectly out of:

a. Any actual or alleged failure, malfunction or inadequacy of:

    (1) Any of the following, whether belonging to any insured or to others:

        (a) Computer hardware, including microprocessors;

        (b) Computer application software;

        (c) Computer operating systems and related software;

        (d) Computer networks;

        (e) Microprocessors (computer chips) not part of any computer system; or

        (f) Any other computerized or electronic equipment or components; or

    (2) Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph 2.a.(1) of this endorsement

due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

b. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph 2.a. of this endorsement.

Copyright, Insurance Services Office, Inc., 1998

Issued: 05-23-02

CG 21 60 09 98
09-98

Policy number TZC-Y91-526237-042

This endorsement is effective    04-01-02    and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### Exclusion Endorsement
### Bodily Injury to Railroad Passengers

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" to any passenger while on, entering into or alighting from a passenger train.

Copyright, Insurance Services Office. Inc.. 1984

CG 22 27 11 85
11-85

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## Abuse or Molestation Exclusion Endorsement

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury," "property damage," "personal and advertising injury" arising out of:

A.  the actual or threatened sexual or other abuse or molestation of any person by the insured, or

B.  the negligent:

1.  employment;

2.  investigation;

3.  supervision;

4.  reporting or failing to report to proper authorities;

5.  retention; or

6.  training

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded in A. above.

Policy number  TZC-Y91-526237-042

This endorsement is effective    04-01-02    and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Specific Corporation, Subsidiary or Division Exclusion Endorsement

This endorsement modifies the insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

Throughout this policy, the words "you" and "your" do not apply to the corporation, subsidiary or division designated in the Schedule.

### Schedule

Specific Corporation, Subsidiary or Division:
COOPERATIVE PROPANE, INC.

Issued: 05-23-02

GL2121
03-92

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Computer Virus Exclusion Endorsement

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "property damage" and "personal and advertising injury" caused by a "computer virus" or "system penetration."

"Computer virus" means:

1. Any "electronic data" introduced or implanted without authorization into electronic data processing equipment or "electronic data" which causes the corruption, distortion, deletion, destruction, unauthorized copying or loss of functionality of "electronic data"; or

2. Unauthorized intrusive computer code or programming that is intentionally developed to replicate itself, taking up computer system memory, without damaging computer programs, instructions or other electronic or digital data, or the computer systems to which it is introduced.

"Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

"System penetration" means the use of a computer to obtain unauthorized access to information and resources stored on electronic data processing equipment in the form of "electronic data".

This endorsement is effective    04-01-02    and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Exclusion Endorsement
## Electrical Utilities Failure to Supply

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" or "property damage" arising out of the failure of any insured to adequately supply electricity provided such failure to supply results from an insured's decision to:

a.   Reduce supply for the purpose of protecting your electrical generation or transmission equipment;

b.   Eliminate supply for the purpose of protecting your electrical generation or transmission equipment; or

c.   Reduce or eliminate supply for the purpose of making repairs or modifications to your electrical transmission equipment or electrical transmission equipment of others.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Reimbursement Endorsement

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

#### Schedule

Total Reimbursement Obligation Limit  DOES NOT APPLY

Reimbursement Limit   250,000

Reimbursement Fund   10,000

Reimbursement by Direct Payment   10,000

Policies to which this endorsement applies:

TZC-Z91-526237-042

This endorsement applies to all coverages provided by the policy.

Damages for which we have been or are entitled to be reimbursed are

INCLUDED IN LIMITS OF INSURANCE

REIMBURSABLE EXPENSES INCLUDE ALLOCATED CLAIM EXPENSES

"Unallocated loss adjustment expenses" are

"UNALLOCATED LOSS ADJUSTMENTS EXPENSES" ARE REIMBURSED AT
20% OF "REIMBURSABLE EXPENSES"

## SECTION I. REIMBURSEMENT LIMITS

A. You will reimburse us for all "reimbursable expenses" subject to the following provisions:

1. The most you will reimburse us for payment of all "reimbursable expenses" is limited to the Total Reimbursement Obligation Limit as stated in the Schedule.

2. Subject to 1. above, the most you will reimburse us for payment of "reimbursable expenses" is further limited to the Reimbursement Limit as stated in the Schedule provided that:

   a. With respect to Incidental Medical Malpractice Liability Coverage, if provided, all claims arising out of "bodily injury" to any one person shall be subject to the Reimbursement Limit.

   b. With respect to Employee Benefits Liability Insurance, if provided, all claims for damages because of loss sustained by any one employee or former employee, and the estate, heirs, legal representatives, beneficiaries or assigns of such person as a result of any act, error or omission or combination of such acts, errors or omissions in the "administration" of your "employee benefits program" shall be subject to the Reimbursement Limit.

   c. With respect to Coverage B, Personal and Advertising Injury Liability, if provided, all claims for damages because of all "personal and advertising injury" sustained by any one person or organization is subject to the Reimbursement Limit.

   d. With respect to Coverage A, Bodily Injury and Property Damage Liability, all claims for damages because of all "bodily injury" and "property damage" arising out of any one "occurrence" is subject to the Reimbursement Limit.

   e. Subject to d. above, with respect to Coverage C, Medical Payments, all medical expenses because of "bodily injury" sustained by any one person are subject to the Reimbursement Limit.

   f. With respect to Coverage F, Pollution Incident Liability Coverage, if provided, all claims for damages because of a "pollution incident" are subject to the Reimbursement Limit.

B. You will reimburse us for all "unallocated loss adjustment expenses" in addition to "reimbursable expenses" however, they are not included in the Reimbursement Limit or the Total Reimbursement Obligation Limit.

## SECTION II. ADMINISTRATION

A. You will reimburse us for "reimbursable expenses" as follows:

1. Reimbursement Fund

   You will start a Reimbursement Fund by paying us the amount designated in the Schedule as Reimbursement Fund prior to the effective date of this endorsement. You authorize us to make withdrawals from the Reimbursement Fund as "reimbursable expenses" are paid. Your Total Reimbursement Obligation Limit as stated in the Schedule shall be reduced by the amount of such withdrawals for "reimbursable expenses."

2. Reimbursement by Direct Payment

   If we incur any "reimbursable expenses" greater than the amount designated in the Schedule as Reimbursement by Direct Payment, we have the right to ask you to pay us for those "reimbursable expenses" directly rather than by withdrawal from the Reimbursement Fund.

3. Monthly Reports

   We will give you a monthly report showing the amount of "reimbursable expenses" that we paid during the month and the amount of money we received by withdrawals from the Reimbursement Fund, by direct payment from you or by any other payment method.

After you receive the monthly report, you will pay us the amount of all withdrawals from the Reimbursement Fund, in order to restore the Reimbursement Fund balance to the original amount. If the monthly report shows that the amount of "reimbursable expenses" we paid is in excess of the amount we received (including amounts received by withdrawals from the Reimbursement Fund, by direct payment from you and by any other payment mechanism), you will pay such expenses to us in addition to the amount required to be paid due to withdrawals from the Reimbursement Fund.

4.  Your payments must be received by us within 15 days after you receive each monthly report and will be considered overdue if not received.

5.  The Reimbursement Fund shall continue to be maintained as stated in this endorsement until all known claim files and losses have been resolved by final settlement or judgment.

B.  You will also reimburse us for "unallocated loss adjustment expenses" on losses to which this endorsement applies.

1.  "Unallocated loss adjustment expenses" will be calculated on the basis shown in the Schedule of this endorsement.

2.  We will give you a separate monthly invoice showing the amount due for "unallocated loss adjustment expenses." Your payment will be due and payable promptly after we notify you and shall be considered overdue if not paid within 15 days.

## SECTION III.  LIMITS OF INSURANCE

Damages for which we have been reimbursed or are entitled to be reimbursed under the provisions of this endorsement are included in the Limits of Insurance when so designated in the Schedule of this endorsement.

## SECTION IV.  ADDITIONAL DEFINITIONS

The following definitions are added:

A.  "Reimbursable expenses" means the sum of:

1.  Damages and

2.  "Allocated claim expenses"

to which this endorsement applies.

B.  "Allocated claim expenses" means legal fees, costs and expenses, including fees of our staff attorneys defending "suits" against you, and any other fees, costs or expenses which we incur or which any "insured" incurs at our request for the investigation, adjustment or settlement and defense of claims or "suits" excluding:

1.  Adjusters fees;

2.  Expenses and salaries of our executive officers;  and

3.  Expenses and salaries of our employees except our staff attorneys defending "suits" against you.

C.  "Unallocated loss adjustment expense" means claim expenses other than "allocated claim expenses" incurred by us when administering claims.

You, by signature of your qualified officer and attachment of your corporate seal agree to abide by the terms and conditions of this endorsement.

Agreed to this _____ day of _____, 20___.


by  _____
                          Your Officer


_____
                          Title

Policy number  TZC-Y91-526237-042

This endorsement is effective    04-01-02    and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

### Stevedoring Operations Endorsement
### (Limited Completed Operations Coverage)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

With respect to stevedoring operations the following is added to paragraph b. of the definition of "products-completed operations hazard" in the DEFINITIONS Section:

"Products-completed operations hazard":

(b) Does not include "bodily injury" or "property damage" arising out of:

(4) "Occurrences" not on board vessels at the site of operations after their completion or abandonment.

Copyright, Insurance Services Office, Inc., 1994

Policy number TZC-Y91-526237-042

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Boats Endorsement

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.  Exclusion g. of COVERAGE A (Section I) does not apply to any watercraft owned or used by or rented to the insured shown in the Schedule.

2.  WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization legally responsible for the use of any such watercraft you own, provided the actual use is with your permission.

#### Schedule

Description of Watercraft:
1973 HOMEMADE STEEL, 25 FT.

1984 MONARCH HEAVY DUTY ALUMINUM MDL 1860 AW, 25 H.P. SN #1387018484 18 FT.

1986 SEARS (JON), 12 FT. 5 H.P. ALUMINUM

1981 MONARCH, 16 FT. ALUMINUM, 10 H.P., MDL 01-01-1642 SN #MAK918550579-79

1962 MARLIN, 15 FT., 18 H.P. ALUMINUM

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

Copyright, Insurance Services Office, Inc., 1984

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Medical Payments Coverage Amendment Endorsement

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

COVERAGE C. MEDICAL PAYMENTS is deleted and replaced by the following:

COVERAGE C. MEDICAL PAYMENTS

1.  **Insuring Agreement.**

    a.  We will pay medical expenses as described below for "bodily injury" caused by an accident:

        (1) On premises you own or rent;

        (2) On ways next to premises you own or rent; or

        (3) Because of your operations:

        provided that:

        (1) The accident takes place in the "coverage territory" and during the policy period;

        (2) The expenses are incurred and reported to us within one year of the date of the accident; and

        (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

    b.  We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

        (1) First aid administered at the time of an accident;

        (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

        (3) Necessary ambulance, hospital, professional nursing and funeral services.

2.  **Exclusions.**

    We will not pay expenses for "bodily injury:"

    a.  **Any Insured**

        To any insured, except "volunteer workers."

b.   Hired Person

   To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c.   Injury On Normally Occupied Premises

   To a person injured on that part of premises you own or rent that the person normally occupies.

d.   Workers Compensation And Similar Laws

   To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be
   provided under a workers compensation or disability benefits law or a similar law.

e.   Athletic Activities

   To a person injured while taking part in athletics.

f.   Products/Completed Operations Hazard

   Included within the "products-completed operations hazard."

g.   Coverage A Exclusions

   Excluded under Coverage A.

h.   War

   Due to war, whether or not declared, or any act or condition incident to war.  War includes civil war, insurrection,
   rebellion or revolution.

i.   Payable Under Other Insurance

   Paid or payable to or on behalf of a person under the provisions of any:

   (1)  Individual, blanket or group accident, disability or hospitalization insurance; or

   (2)  Medical, surgical, hospital or funeral service, benefit or reimbursement plan.

This endorsement is effective                    and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Composite Rate Endorsement
## (Workers Compensation Remuneration - Clerical and Sales Excepted)

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

The premium for this policy shall be based on the total remuneration, computed in accordance with the Workers Compensation Insurance Manuals which we use, earned by all of your officers and "employees" during the policy period, except that the remuneration of officers and "employees" whose duties are classified as clerical or sales shall be excluded.

Policy number TZC-Y91-526237-042

## Important Notice to Policyholders

Do you employ contractors or subcontractors? If so, you may be subject to added insurance costs.

You can minimize these added insurance costs by obtaining valid certificates of insurance from all of your contractors and subcontractors indicating presence of liability insurance. These certificates should be maintained for review by our auditor.

If you are unable to provide valid certificates at the time of audit, the contractor's or subcontractor's exposure may be added to your exposure and a primary insurance charge will be made based on the lack of other insurance. Recent court decisions have held general or principle contractors liable for the acts of uninsured subcontractors.

If you are able to produce valid certificates at the time of audit, an appropriate subcontracted work class such as the following will be added to your exposures such as:

Contractors - Subcontracted Work - in connection with building construction, reconstruction, repair or erection - apartment or office buildings over four stories.

This is a secondary or contingent insurance charge based on the availability of other insurance which may apply to a loss involving you and your contractors or subcontractors.

We appreciate the opportunity to serve you and hope you will find this information useful. If you have questions about this or any other insurance matter, please contact your Wausau Insurance Companies representative.

Notice to Policyholders

## Broadenings, Restrictions and Clarifications of Coverage

This notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the significant broadenings, restrictions and clarifications of coverage that were made in each policy form and endorsement. This notice does not reference every editorial change made in these forms and endorsements.

Please read your policy, and the endorsements attached to your policy, carefully.

### INTERNET LIABILITY

Internet Liability has been listed separately because the changes in these coverage forms result in broadening in coverage in certain respects and may, in certain states, result in a decrease in other respects. The impact of the changes in the revision are difficult to quantify and may differ in different sates.

### BROADENINGS OF COVERAGE

**CG 00 01 10 01 - Commercial General Liability Coverage Form (Occurrence Version)**

- In this policy, the definition of "coverage territory" is being expanded to include personal and advertising injury offenses that take place via the Internet or other electronic means of communication, limited to some extent by the location where the suit is filed.

### RESTRICTIONS IN COVERAGE

**CG 00 01 10 01 - Commercial General Liability Coverage Form (Occurrence Version)**
**CG 00 09 10 01 - Owners and Contractors Protective Liability Coverage Form**
**CG 00 37 10 01 - Products/Completed Operations Liability Coverage Form (Occurrence Version)**

- In most states, the question of whether electronic data is tangible has not been finally decided by the courts in the context of the prior policy language. In jurisdictions where such data is ruled not to be tangible property under prior forms, this change amounts to a reinforcement of current intent. We do not consider electronic data to be tangible, and therefore, do not consider damage to such data to be "property damage." However, to some, this change may be considered a decrease in coverage, if such property is held to be tangible under prior forms. For that reason, out of caution, we are listing it as a decrease. Also, the description of electronic data was added.

**CG 00 01 10 01 - Commercial General Liability Coverage Form (Occurrence Version)**

- This policy has been revised to exclude coverage for "personal and advertising injury" for web-site designers, Internet access and service providers (with an exception for mere placing of links, frames or borders) and electronic chatrooms or bulletin boards.

### CLARIFICATIONS IN COVERAGE

**CG 00 01 10 01 - Commercial General Liability Coverage Form (Occurrence Version)**

- This policy has been clarified with respect to the definition of "personal and advertising injury" offenses such as slander, libel and invasion of privacy by specifically applying the word "publication" to include all types of publication, including those that are electronic.

- This policy has been clarified with respect to the definition of "advertisement" to include notices that are published via the Internet and other forms of electronic communication. Also a statement was included in the definition specifying that the definition applies to advertising material only, when other material, as well as advertising, is put forth on a web-site.

- An exclusion was added to these policies to specifically reference the intellectual property rights of copyright, patent, trademark or trade secret. However, these is an exception to this exclusion for personal and advertising injury offenses of copyright, trade dress or slogan in an "advertisement."

## BROADENINGS OF COVERAGE - COVERAGE FORMS

### CG 00 01 10 01 - Commercial General Liability Coverage Form (Occurrence Version)

- The Criminal Acts exclusion was changed to permit coverage for the vicarious liability of other insureds who have no knowledge of a criminal acts.

- Section II - Who Is An Insured is broadened to include trusts as Named Insureds when designated in the policy Declarations.

- Section II - Who Is An Insured is broadened to automatically include "volunteer workers" as insureds, but only while performing duties related to the conduct of the insured's business.

## BROADENINGS OF COVERAGE - MULTISTATE ENDORSEMENTS

### CG 20 37 10 01 - Additional Insured - Owners, Lessees Or Contractors - Completed Operations

- This endorsement provides a broadening of coverage by explicitly providing completed operations coverage for a specified additional insured.

### CG 20 96 10 01 - Limited Exclusion - Personal and Advertising Injury - Lawyers

- This endorsement provides coverage for personal and advertising injury liability for lawyers when they perform activities that fall outside of a lawyer's professional services.

### CG 28 05 10 01 - Personal Injury Liability Endorsement

- This endorsement provides broadening in coverage over its prior provisions, as there will not be coverage for vicarious liability of other insureds who have no knowledge of a criminal act.

## CLARIFICATIONS IN COVERAGE AND OTHER EDITORIAL REVISIONS - COVERAGE FORMS

All General Liability coverage forms contain minor editorial revisions to provide for consistency among policies. In addition, these coverage forms have been revised to incorporate other various revisions in order to clarify coverage. Those latter changes to each individual coverage form are described below:

### CG 00 33 10 01 - Liquor Liability Coverage Form (Occurrence Version)
### CG 00 37 10 01 - Products/Completed Operations Liability Coverage Form (Occurrence Version)

- These policies are revised to clarify that international waters or airspace are included under "coverage territory" but only if an "injury" occurs in the course of travel or transportation between any two of the following:  US (including its territories and possessions), Puerto Rico and Canada.

### CG 00 01 10 01 - Commercial General Liability Coverage Form (Occurrence Version)
### CG 00 09 10 01 - Owners and Contractors Protective Liability Coverage Form
### CG 00 33 10 01 - Liquor Liability Coverage Form (Occurrence Version)
### CG 00 37 10 01 - Products/Completed Operations Liability Coverage Form (Occurrence Version)

- These policies have been revised to incorporate the "known loss" provision directly into the Insuring Agreement. We are not introducing the known loss language in CG 00 35.

**CG 00 35 10 01 - Railroad Protective Liability Coverage Form**

- We are not incorporating the "known loss" provision into the Railroad Protective Liability Policy because railroad employees are covered under the application of Federal Employers Liability Act.

**CG 00 01 10 01 - Commercial General Liability Coverage Form (Occurrence Version)**
**CG 00 09 10 01 - Owners and Contractors Protective Liability Coverage Form**
**CG 00 33 10 01 - Liquor Liability Coverage Form (Occurrence Version)**
**CG 00 35 10 01 - Railroad Protective Liability Coverage Form**
**CG 00 37 10 01 - Products/Completed Operations Liability Coverage Form (Occurrence Version)**

- We are revising the Legal Action Against Us Condition in these policies to remove the phrase "obtained after an actual trial", as the definition of "suit" allows damages to be awarded through an arbitration or other alternative dispute resolution, so the judgment can be obtained without an actual trial.

**CG 00 01 10 01 - Commercial General Liability Coverage Form (Occurrence Version)**

- The Aircraft, Auto or Watercraft exclusion is being revised to clarify the intent of this exclusion to apply even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured.

**CG 00 35 10 01 - Railroad Protective Liability Coverage Form**

- The Pollution exclusion in this coverage form is revised to clarify that coverage is not excluded for the insured whose liability arises out of the escape of fuels or lubricants from equipment used by contractors at their job site in connection with operations performed by such contractors.

**CLARIFICATIONS IN COVERAGE AND OTHER EDITORIAL REVISIONS - ENDORSEMENTS**

**CG 20 22 10 01 - Additional Insured - Church Members, Officers and Volunteer Workers**

- We are revising CG 20 22 to delete the reference to volunteer workers since the provisions relating to volunteer workers have been incorporated into the CGL. This doesn't decrease coverage because of the fact that, in the prior edition of the coverage form, coverage for volunteer workers was excluded.

**CG 20 35 10 01 - Additional Insured - Grantor of Licenses - Automatic Status When Required By Licensor**
**CG 20 36 10 01 - Additional Insured - Grantor of Licenses**

- These new endorsements will add a person or organization who grants licenses as an additional insured to the policy of a person or organization who makes and distributes products of that person or organization. CG 20 35 provides automatic status as an additional insured of grantors of licenses. CG 20 36 requires that the grantor of the license be named in the Schedule of the endorsement.

**CG 21 37 10 01 - Exclusion - Employees and Volunteer Workers as Insureds (Formerly Exclusion - Employees as Insureds)**

- We are revising this endorsement to clarify that volunteer workers as well as employees are excluded as insureds.

**CG 21 37 10 01 - Exclusion - Employees and Volunteer Workers as Insureds**
**CG 22 71 10 01 - Colleges or Schools (Limited Form)**
**CG 22 72 10 01- Colleges or Schools**

• The Aircraft, Auto or Watercraft exclusion in these policies is being revised to clarify that this exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, training or monitoring of others by an insured.

## RESTRICTIONS IN COVERAGE - COVERAGE FORMS

**CG 00 01 10 01 - Commercial General Liability Coverage Form (Occurrence Version)**
**CG 00 09 10 01 - Owners and Contractors Protective Liability Coverage Form**
**CG 00 37 10 01 - Products/Completed Operations Liability Coverage Form (Occurrence Version)**

• The Damage to Property exclusion in these policies is revised to clarify that expenses incurred for repairs, etc. made on the insured's own property for any reason, including to avoid injury to a third party, will not be covered.

## RESTRICTIONS IN COVERAGE - ENDORSEMENTS

**CG 21 66 10 01 - Exclusion - Volunteer Workers**

• When this endorsement is attached to a CGL, coverage is restricted by excluding volunteer works as insureds from a CGL policy.

**CG 22 69 10 01 - Druggists**

• We are revising CG 22 69 to clarify that the types of pharmacist services that are not within the traditional duties of pharmacists like writing prescriptions, administering drugs and vaccination, and performing blood tests are excluded.

**CG 22 94 10 01 - Exclusion - Damage to Work Performed by Subcontractors on Your Behalf**
**CG 22 95 10 01 - Exclusion - Damage to Work Performed by Subcontractors on Your Behalf - Designated Sites or Operations**

• When these new endorsements are attached to a CGL, coverage is restricted by excluding defects in "your work" from a CGL policy, even for work performed by a subcontractor.

**CG 22 98 10 01 - Exclusion - Internet Service Providers and Internet Access Providers Errors and Omissions**
**CG 22 99 10 01 - Professional Liability Exclusion - Web-Site Designers**

• These endorsements are introduced to exclude coverage for injury or damage arising out of the rendering or failure to render Internet service, Internet access, web-site designer or consultant services, as these professional services are not contemplated in the CGL coverage form.

**CG 28 12 10 01 - Pesticide or Herbicide Applicator Coverage**

• This endorsement is being revised to apply the exception to the exclusion to only paragraph 1(d) of exclusion j., so that the scope of coverage for pesticide or herbicide applicator should be the same under an OCP policy as it is under the CGL policy.

**To: Florida Property and Liability Policyholders**

Controlling your insurance costs is an important goal in today's business climate. At Wausau Insurance Companies, we're ready to help you. Our Loss Prevention Consultants can offer advice about loss prevention and risk management techniques in areas such as:

- Pollution and Environmental Hazards

- Disease Hazards

- Accidental Occurrences

- Fire Hazards, Fire Prevention and Detection

- Liability for Acts from The Course of Business

- Slip and Fall Hazards

- Product Injury

- Hazards Unique to Particular Class or Category of Business

At Wausau we have developed programs to assist you. These cover a broad spectrum of businesses. They address "on site" consultation visits by our Loss Prevention Consultants, training courses, charts, forms, literature, posters, signs, access to audiovisuals, machine guard illustrations, and fleet safety information.

We suggest as your first step that you request a free written guideline for your use in analyzing your loss exposures. After you work through the guideline, you may then wish to contact us for more specific assistance.

If you wish to request a risk management guideline or would like to discuss our services further, please send this request to:

LOSS PREVENTION SERVICES                          Fax Telephone Number: (770) 667-0586
WAUSAU INSURANCE COMPANIES
PO BOX 105067
ATLANTA GA 30348-5067

Please contact me about:

( ) A survey of my operations                      Safety Media:
( ) Advice about training methods
( ) Safety education programs                       ( ) Videos              ( ) Signs
( ) Special training courses                        ( ) Posters            ( ) Reference Material

Other -Specify: _____

Policy Number _____
Firm _____
Contact _____ Title _____ Phone Number _____
Address _____
City _____ State _____ Zip _____

Amount Due
$

| Policy Number | End. No. | T | Producer | | Alpha |
|---|---|---|---|---|---|
| TZC-791-526237-042 | 001 | 1 | 002189 | | |

Named Insured and Mailing Address

ALABAMA ELECTRIC COOPERATIVE INC
PO BOX 550
ANDALUSIA AL 36420

This endorsement is effective     06-07-02          and will terminate with the policy.

Policy Period:    04-01-02    to    04-01-03

IC9998
01-96

| Sls Cls    Kind 52    PK 553 | | | | | Auto Comm | | | Cr. | Div. | BROKER COMMISSION | | Property Only |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Co. | L/Cov. | T | St. | P.P. | Aux | Premium | X | Yr. | | | Property |
| Producing Office: MOB | | | 1 | | | | | | | Percent | | G.L. |
| Underwriting Office: MAJ | | | 1 | | | | | | | Amount | Cr. | Auto |
| Records Copy: | | | 1 | | | | | | | | | Crime |
| Audit Copy: | | | 1 | | | | | | | | | I.M. |
| | | | 1 | | | | | | | | | B & M |
| Bureau: | | | | | | | | | | | | % Issued: 07-16-02JESLCH |

Endorsement number 001 for policy number TZC-Y91-526237-042

Named Insured  ALABAMA ELECTRIC COOPERATIVE INC

This endorsement is effective 06-07-02 and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Change Endorsement

THE FOLLOWING FORM(S) AND/OR ENDORSEMENT(S) ARE ADDED AND ARE EFFECTIVE
WITH THE EFFECTIVE DATE OF THIS CHANGE:

CG 20 11 01 96 01-96    ADDITIONAL INSURED ENDORSEMENT
                        (MANAGERS OR LESSORS OF PREMISES)

PREMIUM INCLUDED IN COMPOSITE RATE

Policy number  TZC-Y91-526237-042

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Additional Insured Endorsement
## (Managers or Lessors of Premises)

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1.  Any "occurrence" which takes place after you cease to be a tenant in that premises.

2.  Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated in the Schedule.

### Schedule

Designation of Premises
(Part Leased to You)
HWY 29 1/2 MILES NORTH OF
CITY LIMITS, ANDALUSIA AL 36420

Name of Person or Organization
(Additional Insured)
SHERMAN & REILLY, INC

Copyright, Insurance Services Office, Inc., 1994

CG 20 11 01 96
01-96

Page 1 of 1

# EXHIBIT B

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ALABAMA

ALABAMA ELECTRIC COOPERATIVE,    )
INC. and WAUSAU INSURANCE CO.,   )
                                 )
        Plaintiffs               )
                                 )
vs.                              )  CASE NO. CV-03-027-B
                                 )
QBE INSURANCE CORPORATION,       )
INTERNATIONAL ASSURANCE, INC.,   )
BAILEY'S CONSTRUCTION CO., INC.  )
                                 )
        Defendants               )

## AMENDED AND RESTATED INTERVENOR COMPLAINT

COMES NOW Jack Bailey and files this his complaint Amended and Restated Intervenor Complaint against Alabama Electric Cooperative, Inc. (AEC) and Wausau Insurance Company (Wausau).

## PARTIES

1.    Jack Bailey is an adult resident citizen of Washington County, Alabama and has been such at all times relevant to this lawsuit. Jack Bailey is the owner and president of Bailey's Construction Company, Inc. (Bailey's Construction) and has been at all times relevant to this lawsuit.

2.    Alabama Electric Cooperative, Inc. (AEC) is an Alabama corporation claiming over one billion dollars in assets that began this litigation by filing a frivolous lawsuit against Jack Bailey's company Bailey's Construction.

3.   Wausau Insurance Company (Wausau) is one of the world's largest insurance companies and joined with AEC in filing a frivolous lawsuit against Jack Bailey's company Bailey's Construction.

## FACTUAL BACKGROUND

4. In or about the year 2000, AEC completed construction of a gypsum plant at the Lowman Plant site to convert scrubber sludge to a useable synthetic gypsum for agricultural and construction applications.

5.   The idea behind the construction of the gypsum plant was born of necessity.   The holding pond for storage of scrubber sludge had reached its maximum capacity and AEC was on the verge of incurring substantial cost in disposing of the scrubber sludge.   If the scrubber sludge could not be converted to a useable product and a market found for the product, AEC would incur millions of dollars in cost in disposing of the scrubber sludge.

6.   Unfortunately for AEC, after it incurred the cost of constructing the gypsum plant and converting scrubber sludge to useable synthetic gypsum, AEC could not find a market for its product.

7.   In or about 2000, AEC turned to Jack Bailey for help.   Like other side businesses started by AEC, for example

its propane business, the synthetic gypsum business was on the verge of complete failure.

8.    Jack Bailey had a pre-existing relationship with a cement plant operating in Demopolis, Alabama that was unrelated to the work performed by Bailey's Construction for AEC. Bailey's Construction began working at the cement plant in Demopolis in or about 1990 and continued working for the plant as it changed ownership several times during the 1990's.

9.    One of Bailey's Construction's jobs for the cement plant in Demopolis was transportation of natural gypsum from the Alabama State Docks to Demopolis for use in making cement.

10.    Jack Bailey entered into an agreement with AEC whereby he would market the synthetic gypsum produced at the Lowman Plant site.    In exchange for Jack Bailey's marketing services, AEC agreed to give Bailey's Construction the exclusive rights to transport all of the gypsum produced at the Lowman Plant site.

11.    Jack Bailey transported samples of the synthetic gypsum produced at the Lowman Plant site to the cement plant in Demopolis. Jack Bailey worked with the cement plant in Demopolis to arrive at a use for the synthetic gypsum in the cement production process.    Finally, Jack Bailey introduced AEC personnel to personnel at the cement plant in Demopolis,

3

thus beginning the business relationship between AEC and the
cement plant in Demopolis that exists today. Without the work
and labor performed by Jack Bailey in marketing this product,
AEC would not have a market for its synthetic gypsum.

### COUNT 1 - BREACH OF CONTRACT

12.  Jack Bailey incorporates by reference the prior
allegations of his Intervenor Complaint.

13.  In or about May 2001, Jack Bailey and AEC entered
into an agreement whereby Jack Bailey agreed to foregoe his
marketing compensation as long as his company, Bailey's
Construction, had the exclusive right to transport the
synthetic gypsum manufactured at the Lowman Plant site.

14.  AEC breached its agreement with Jack Bailey when it
unilatterally breached its transportation agreement with
Bailey's Construction by letter dated January 7, 2003. At
that point in time, Jack Bailey's marketing compensation
became due and payable.

15.  AEC has failed to pay Jack Bailey all marketing
compensation due and payable under his agreement.

16.  Jack Bailey's agreement with AEC is governed by the
Alabama Sales Representative's Commission Contracts statute
(§§8-24-1 et seq.).

17.  AEC acted willfully and maliciously in unilaterally
cancelling its transportation contract with Bailey's

4

Construction and withholding marketing compensation from Jack Bailey.

18. AEC was aware Jack Bailey and Bailey's Construction had dedicated a substantial amount of time and resources to fulfill its obligation with AEC and that unilateral cancellation of these contracts would effectively put Jack Bailey and Bailey's Construction out of business.

19. AEC's design and purpose in unilaterally canceling its agreement was to inflict damage on Jack Bailey and Bailey's Construction.

20. AEC's intent in unilaterally canceling the contract was to punish Bailey's Construction and Jack Bailey for the truthful testimony Jack Bailey gave in the McLeod lawsuit.

21. Pursuant to the Alabama Sales Representative's Commission Contracts statute (§§8-24-1 et seq.) and AEC's willful and malicious conduct, Jack Bailey is entitled to recover attorney's fees.

WHEREFORE, PREMISES CONSIDERED, Jack Bailey demands judgment against AEC for compensatory damages, treble damages, plus reasonable attorney's fees and court costs, in an amount in excess of the minimum jurisdictional limits of the Court, all to be determined by a jury.

5

## COUNT 2 - FRAUDULENT MISREPRESENTATION

22. Jack Bailey incorporates by reference the prior allegations of his Intervenor Complaint.

23. In or about May, 2001, AEC and Jack Bailey were negotiating a contract.

24. During the contract negotiations, AEC represented to Jack Bailey and Bailey's Construction the following:

   a)  Bailey's Construction would be the exclusive transporter of gypsum hauled from AEC's Lowman Plant; and,

   b)  Bailey's Construction would be the exclusive transporter of gypsum hauled from AEC's Lowman Plant for as long as AEC had gypsum to haul.

25. Said representations were false and AEC knew the representations were false.

26. Jack Bailey believed the said representations and relied on them and acted upon them by dedicating substantially all of Bailey's Construction's resources to fulfill the contract with AEC, and foregoing his marketing compensation, to the detriment of Bailey's Construction's and Jack Bailey's other potential business.

27. Jack Bailey could not and did not discover AEC's fraud until after AEC unilaterally canceled its contract by letter dated January 7, 2003.

6

28. As a proximate consequence of AEC's fraud, Jack Bailey and Bailey's Construction suffered damages, including (but not limited to) the following: effectively put out of business, lost profits, lost benefit of the bargain, lost expenses incurred to fulfill the contract, lost interest, lost personal income and assets.

29. Jack Bailey claims punitive or exemplary damages from AEC due to the intentional nature of AEC's conduct.

WHEREFORE, PREMISES CONSIDERED, Jack Bailey demands judgment against AEC for compensatory and punitive damages in an amount in excess of the minimum jurisdictional limits of the Court, all to be determined by a jury.

### COUNT 3 - FRAUDULENT SUPPRESSION

30. Jack Bailey incorporates by reference the prior allegations of his Intervenor Complaint.

31. In or about May, 2001, AEC and Jack Bailey were negotiating a contract.

32. During the contract negotiations, AEC fraudulently suppressed or failed to disclose the following:

    a)    AEC would unilaterally cancel the contract if Jack Bailey did not accept complete responsibility for the death of Wilene McLeod.

    b)    AEC would unilaterally cancel the contract if Jack Bailey did not help AEC cover up the unsafe

practices of AEC which caused the death of Wilene McLeod.

33. Without knowledge of the suppressed and undisclosed information, Jack Bailey acted by dedicating substantially all of Bailey's Construction's resources to fulfill the contract with AEC, and foregoing his marketing compensation to the detriment of Bailey's Construction's and Jack Bailey's other potential business.

34. Jack Bailey could not and did not discover AEC's fraud until after AEC unilaterally canceled its contract by letter dated January 7, 2003.

35. As a proximate consequence of AEC's fraud, Jack Bailey and Bailey's Construction suffered damages, including (but not limited to) the following: effectively put out of business, lost profits, lost benefit of the bargain, lost expenses incurred to fulfill the contract, lost interest, lost personal income and assets.

36. Jack Bailey claims punitive or exemplary damages from AEC due to the intentional nature of AEC's conduct.

WHEREFORE, PREMISES CONSIDERED, Jack Bailey demands judgment against AEC for compensatory and punitive damages in an amount in excess of the minimum jurisdictional limits of the Court, all to be determined by a jury.

8

## COUNT 4 - SLANDER

37. Jack Bailey incorporates by reference the prior allegations of his intervenor complaint.

38. In or about January, 2003, in Washington County, Alabama, AEC and/or Wausau slandered Jack Bailey by publishing false and defamatory statements of and concerning Jack Bailey.

39. As a proximate consequence of AEC's and/or Wausau's slander, Jack Bailey suffered damages.

40. Jack Bailey claims punitive and exemplary damages from AEC and Wausau due to AEC and Wausau publishing the defamatory statements with malice and with knowledge of the falsity of the statements or with gross and reckless disregard of the falsity of the statements.

WHEREFORE, PREMISES CONSIDERED, Bailey's Construction demands judgment against AEC and Wausau for compensatory and punitive damages in an amount in excess of the minimum jurisdictional limits of the Court, all to be determined by a jury.

## COUNT 5 - WORK AND LABOR DONE x

41. Jack Bailey incorporates by reference the prior allegations of his intervenor complaint.

42. In or about the years 2000, 2001 and 2002 Jack Bailey did work and labor for AEC at AEC's request.

43. AEC has failed or refused to pay for said work and labor or for the reasonable value of said work and labor.

44. AEC's failure or refusal to pay for said work and labor is willful and malicious.

WHEREFORE, Jack Bailey demands judgement against AEC for the reasonable value of said work and labor, compensatory damages, plus reasonable attorney's fees and court costs, in an amount in excess of the minimum jurisdictional limits of the Court, all to be determined by a jury.

<u>COUNT 6 - UNJUST ENRICHMENT</u> x

45. Jack Bailey incorporates by reference the prior allegations of his intervenor complaint.

46. In or about the years 2000, 2001, and 2002 Jack Bailey marketed synthetic gypsum manufactured by AEC at its Lowman Plant site. Jack Bailey relinquished his right to the compensation for marketing this product in exchange for the exclusive right of his company Bailey's Construction to transport the synthetic gypsum.

47. By letter dated January 7, 2003, AEC unilaterally terminated Bailey's Construction's exclusive contract to transport the synthetic gypsum.

48. AEC's withholding of Jack Bailey's marketing compensation has unjustly enriched AEC at the expense of Jack Bailey.

WHEREFORE, Jack Bailey demands judgement against AEC for compensatory damages, plus reasonable attorneys fees and court costs, in an amount in excess of the minimum jurisdictional limits of the Court, all to be determined by a jury.

### COUNT 7 - CONSPIRACY

49. Jack Bailey incorporates by reference the prior allegations of his intervenor Complaint.

50. AEC and Wausau schemed, planned, designed and conspired to commit the tortuous conduct alleged in this intervenor complaint.

51. As a proximate consequence of AEC's and Wausau's conspiracy, Jack Bailey suffered damages.

52. Jack Bailey claims punitive or exemplary damages from AEC and Wausau due to the intentional nature of the conduct.

WHEREFORE, PREMISES CONSIDERED, Jack Bailey demands judgment against AEC and Wausau for compensatory and punitive damages in an amount in excess of the minimum jurisdictional limits of the Court, to be determined by a jury.

Respectfully submitted,

McCORQUODALE & McCORQUODALE
Attorneys for Jack Bailey


BY:_____
        CHRISTOPHER A. BAILEY

11

Of Counsel:

G. Kevin Howell
Turner, Onderdonk, Kimbrough & Howell, P.A.
Post Office Drawer 1389
Chatom, Alabama  36518
251-847-2237


        JACK BAILEY DEMANDS A TRIAL BY STRUCK JURY ON ALL THE
ISSUES IN THIS ACTION TRIABLE BY JURY.


                              BY: _____
                                   CHRISTOPHER A. BAILEY

12

CERTIFICATE OF SERVICE

I do hereby certify that I have on this _30th_ day of May 2007, served a copy of the foregoing pleading on the following by mailing the same by United States mail, properly addressed and first-class postage prepaid

Ronald G. Davenport
Rushton, Stakely, Johnston, & Garrett, P.A.
Attorneys for AEC and Wausau
Post Office Box 270
Montgomery, Alabama 36101-0270

Dennis P. McKenna
Prince, McKean, McKenna & Broughton, LLC
Post Office Box 2866
Mobile, Alabama 36652

BY: _____
CHRISTOPHER A. BAILEY

Post Office Drawer 1137
Jackson, Alabama 36545
(251) 246-9015

13



IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ALABAMA

ALABAMA ELECTRIC COOPERATIVE,        )
INC. and WAUSAU INSURANCE CO.,       )
                                      )
      Plaintiffs                      )
                                      )
vs.                                   )  CASE NO. CV-03-027-B
                                      )
QBE INSURANCE CORPORATION,            )
INTERNATIONAL ASSURANCE, INC.,        )
BAILEY'S CONSTRUCTION CO., INC.       )
                                      )
      Defendants                      )

## AMENDMENT TO COUNTERCLAIM

COMES NOW Bailey's Construction Company, Inc. (Bailey's Construction), and files this its amendment to counterclaim as follows:

### COUNT 13 - MALICIOUS PROSECUTION [AEC v. QBE]

74. Bailey's Construction incorporates by reference the prior allegations of its Counterclaim.

75. On or about May 3, 2002, AEC and Wausau maliciously obtained the issuance of a summons and complaint from the Circuit Court of Covington County, Alabama and had it served on Bailey's Construction. The Complaint was transferred to the Circuit Court of Washington County, Alabama and was assigned case number CV-03-027B.

76. On or about November 23, 2005 the cause was heard by the Honorable Judge Thomas Baxter and Bailey's Construction was dismissed as a defendant in case number CV-03-027B in the Circuit Court of Washington County, Alabama

77. As a proximate consequence of AEC's and Wausau's malicious prosecution of said cause, Bailey's Construction suffered damages.

78. Bailey's Construction claims punitive or exemplary damages from AEC due to the malicious nature of AEC's and Wausau's conduct.

WHEREFORE, PREMISES CONSIDERED, Jack Bailey demands judgment against AEC and Wausau for compensatory and punitive damages in an amount in excess of the minimum jurisdictional limits of the Court, to be determined by a jury.

Respectfully submitted,

McCORQUODALE & McCORQUODALE

BY: _____
CHRISTOPHER A. BAILEY

P.O. Drawer 1137
Jackson, AL 36545
(251) 246-9015

Of Counsel:

G. Kevin Howell
Turner, Onderdonk, Kimbrough & Howell, P.A.
Post Office Drawer 1389
Chatom, Alabama 36518
251-847-2237

BAILEY'S CONSTRUCTION COMPANY, INC. DEMANDS A TRIAL BY STRUCK JURY ON ALL THE ISSUES IN THIS ACTION TRIABLE BY JURY.

BY: _____
CHRISTOPHER A. BAILEY

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have on this ___ day of May
2007, served a copy of the foregoing pleading on the following
by mailing the same by United States mail, properly addressed
and first-class postage prepaid.

Ronald G. Davenport
Rushton, Stakely, Johnston, & Garrett, P.A.
Attorneys for AEC and Wausau
Post Office Box 270
Montgomery, Alabama 36101-0270

Dennis P. McKenna
Prince, McKean, McKenna & Broughton, P.A.
Post Office Box 2866
Mobile, AL 36652

BY: _____
    CHRISTOPHER A. BAILEY

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ALABAMA

ALABAMA ELECTRIC COOPERATIVE,    )
INC. and WAUSAU INSURANCE CO.,   )
                                 )
         Plaintiffs              )
                                 )
vs.                              )  CASE NO. CV-03-027-B
                                 )
QBE INSURANCE CORPORATION,       )
INTERNATIONAL ASSURANCE, INC.,   )
BAILEY'S CONSTRUCTION CO., INC.  )
                                 )
         Defendants              )

## COUNTERCLAIM

COMES NOW Bailey's Construction Company, Inc. (Bailey's Construction), and files this its counterclaim against plaintiffs, Alabama Electric Cooperative, Inc.(AEC) and Wausau Insurance Co. (Wausau).

## COUNT 1 - BREACH OF CONTRACT

1.  On or about October 30, 2000, Wilene McLeod was killed while working on the premises of AEC's Lowman Plant in Washington County, Alabama, while driving a dump truck for Bailey's Construction.

2.  On or about May 29, 2001, Bailey's Construction and AEC entered into an agreement. The written terms of the agreement are contained in a one page purchase order dated May 29, 2001, numbered 136518. A copy of the purchase order is filed herewith as Exhibit "1".

3.  The agreement calls for Bailey's Construction to transport gypsum from AEC's Lowman Plant to Demopolis, Alabama.

4.  After entering into the agreement to haul gypsum, Bailey's Construction dedicated substantially all of its resources to fulfill the contract, to the detriment of Bailey's Construction's other business.

5.  After the agreement was reached, Bailey's Construction hauled all of the gypsum transported from AEC's Lowman Plant to Demopolis, Alabama in 2001 and 2002.

6.  In August 2001 the Estate of Wilene McLeod filed a civil lawsuit for wrongful death against AEC.

7.  On March 17, 2002, Jack Bailey, President and owner of Bailey's Construction, testified by deposition in the lawsuit filed by the Estate of Wilene McLeod against AEC.

8.  Jack Bailey's testimony was truthful and unfavorable to AEC's defense of the McLeod lawsuit.

9.  On or about April 12, 2002, AEC filed a motion to bring a third-party complaint against Bailey's Construction in the McLeod lawsuit.

10.  On or about May 3, 2002, AEC and its liability insurance carrier Wausau filed a complaint against Bailey's

2

Construction in Covington County, which was transferred to Washington County and is now pending as the present case.

11.  In or about September 2002 AEC settled with McLeod and the third-party complaint against Bailey's Construction was dismissed.

12.  By letter dated January 7, 2003, AEC breached its contract with Bailey's Construction by unilaterally canceling the contract effective January 31, 2003. A copy of the cancellation letter is filed herewith as Exhibit "2".

13.  At all relevant times, Bailey's Construction was performing and capable of performing pursuant to the terms of the contract.

14.  As a natural proximate consequence of AEC's breach, Bailey's Construction suffered damages, including (but not limited to) the following: effectively put out of business, lost profits, lost benefit of the bargain, lost expenses incurred to fulfill the contract, lost interest.

WHEREFORE, PREMISES CONSIDERED, Bailey's Construction demands judgment against AEC for compensatory damages in an amount that would be in excess of the minimum jurisdictional limit of this Court, to be determined by a jury.

3

## COUNT 2 - WILLFULNESS

15. Bailey's Construction incorporates by reference the allegations in Count 1 of its Counterclaim.

16. AEC was aware that Bailey's Construction had dedicated substantially all of its resources to fulfill the contract and that unilateral cancellation of the contract would effectively put Bailey's Construction out of business.

17. AEC's design and purpose in unilaterally canceling the contract was to inflict damage on Bailey's Construction.

18. AEC's intent in unilaterally canceling the contract was to punish Bailey's Construction for the truthful testimony of Jack Bailey given in the McLeod lawsuit.

19. As a proximate consequence of AEC's willfulness, Bailey's Construction suffered damages, including (but not limited to) the following: effectively put out of business, lost profits, lost benefit of the bargain, lost expenses incurred to fulfill the contract, lost interest.

20. Bailey's Construction claims punitive or exemplary damages from AEC due to the willful and vindictive nature of AEC's conduct.

WHEREFORE, PREMISES CONSIDERED, Bailey's Construction

4

demands judgment against AEC for compensatory and punitive
damages in an amount that would be in excess of the minimum
jurisdictional limit of this Court, to be determined by a
jury.

### COUNT 3 - FRAUDULENT MISREPRESENTATION

*22.   Bailey's Construction incorporates by reference
the allegations in Count 1 and Count 2 of its Counterclaim

22.   In or about May, 2001, AEC and Bailey's
Construction were negotiating a contract.

23.   During the contract negotiations, AEC represented
to Bailey's Construction the following:

    a)   Bailey's Construction would be the exclusive
        transporter of gypsum hauled from AEC's Lowman
        Plant; and,

    b)   Bailey's Construction would be the exclusive
        transporter of gypsum hauled from AEC's Lowman
        Plant for as long as AEC had gypsum to haul.

24.   Said representations were false and AEC knew the
representations were false.

25.   Bailey's Construction believed the said
representations and relied on them and acted upon them by
dedicating substantially all of its resources to fulfill the

5

contract with AEC, to the detriment of Bailey's
Construction's other business.

26.  Bailey's Construction could not and did not
discover AEC's fraud until after AEC unilaterally canceled
its contract by letter dated January 7, 2003.

27.  As a proximate consequence of AEC's fraud,
Bailey's Construction suffered damages, including (but not
limited to) the following: effectively put out of business,
lost profits, lost benefit of the bargain, lost expenses
incurred to fulfill the contract, lost interest.

28.  Bailey's Construction claims punitive or exemplary
damages from AEC due to the intentional nature of AEC's
conduct.

WHEREFORE, PREMISES CONSIDERED, Bailey's Construction
demands judgment against AEC for compensatory and punitive
damages in an amount that would be in excess of the minimum
jurisdictional limit of this Court, to be determined by a
jury.

### COUNT 4 - FRAUDULENT SUPPRESSION/FAILURE TO DISCLOSE

29.  Bailey's Construction incorporates by reference
the allegations in Count 1, Count 2 and Count 3 of its
Counterclaim.

6

30.  In or about May, 2001, AEC and Bailey's Construction were negotiating a contract.

31.  During the contract negotiations, AEC fraudulently suppressed or failed to disclose the following:

    a)   AEC would unilaterally cancel the contract if Bailey's Construction did not accept complete responsibility for the death of Wilene McLeod.

    b)   AEC would unilaterally cancel the contract if Bailey's Construction did not help AEC cover up the unsafe practices of AEC which caused the death of Wilene McLeod.

32.  Without knowledge of the suppressed and undisclosed information, Bailey's Construction acted by dedicating substantially all of its resources to fulfill the contract with AEC, to the detriment of Bailey's Construction's other business.

33.  Bailey's Construction could not and did not discover AEC's fraud until after AEC unilaterally canceled its contract by letter dated January 7, 2003.

34.  As a proximate consequence of AEC's fraud, Bailey's Construction suffered damages, including (but not limited to) the following: effectively put out of business,

7

lost profits, lost benefit of the bargain, lost expenses
incurred to fulfill the contract, lost interest.

35.  Bailey's Construction claims punitive or exemplary
damages from AEC due to the intentional nature of AEC's
conduct.

WHEREFORE, PREMISES CONSIDERED, Bailey's Construction
demands judgment against AEC for compensatory and punitive
damages in an amount that would be in excess of the minimum
jurisdictional limit of this Court, to be determined by a
jury.

### COUNT 5 - MALICIOUS PROSECUTION [WHEAT]

36.  Bailey's Construction incorporates by reference
the allegations in Count 1, Count 2, Count 3 and Count 4 of
its Counterclaim.

37.  On or about April 17, 2002, AEC maliciously and
without probable cause therefor, obtained the issuance of a
summons and third-party complaint and had it served on
Bailey's Construction.

38.  On or about September 23, 2002, the cause was
heard by the Honorable Thomas Baxter and Bailey's
Construction was dismissed as a defendant in case number CV-
02-035-B in the Circuit Court of Washington County, Alabama.

9

39.  As a proximate consequence of AEC's malicious prosecution of said cause, Bailey's Construction suffered damages.

40.  Bailey's Construction claims punitive and exemplary damages from AEC due to the malicious nature of AEC's conduct.

WHEREFORE, PREMISES CONSIDERED, Bailey's Construction demands judgment against AEC for compensatory and punitive damages in an amount that would be in excess of the minimum jurisdictional limit of this Court, to be determined by a jury.

### COUNT 6 - ABUSE OF PROCESS [WHEAT]

41.  Bailey's Construction incorporates by reference the allegations in Count 1, Count 2, Count 3, Count 4, and Count 5 of its Counterclaim.

42.  On or about April 17, 2002, AEC maliciously obtained the issuance of a summons and third-party complaint from the Circuit Court of Washington County, Alabama in case number CV-02-035B, and had it served on Bailey's Construction.

43.  AEC abused the issuance of the summons and third-party complaint in that it was served on Bailey's

9

Construction by AEC to punish, harass, and intimidate Bailey's Construction after Jack Bailey testified in the McLeod lawsuit.

44. As a proximate consequence of AEC's abuse of process, Bailey's Construction suffered damages.

45. Bailey's Construction claims punitive or exemplary damages from AEC due to the abusive nature of AEC's conduct.

WHEREFORE, PREMISES CONSIDERED, Bailey's Construction demands judgment against AEC for compensatory and punitive damages in an amount that would be in excess of the minimum jurisdictional limit of this Court, to be determined by a jury.

## COUNT 7 – MALICIOUS PROSECUTION [MCLEOD]

46. Bailey's Construction incorporates by reference the allegations in Count 1, Count 2, Count 3, Count 4, Count 5 and Count 6 of its Counterclaim.

47. On or about April 12, 2002, AEC maliciously and without probable cause therefor, obtained the issuance of a summons and third-party complaint and had it served on Bailey's Construction.

48. On or about September 4, 2002, the cause was heard by the Honorable Harold L. Crow and Bailey's Construction

10

was dismissed as a defendant in case number CV-01-109-C in the Circuit Court of Washington County, Alabama.

49. As a proximate consequence of AEC's malicious prosecution of said cause, Bailey's Construction suffered damages.

50. Bailey's Construction claims punitive or exemplary damages from AEC due to the malicious nature of AEC's conduct.

WHEREFORE, PREMISES CONSIDERED, Bailey's Construction demands judgment against AEC for compensatory and punitive damages in an amount that would be in excess of the minimum jurisdictional limit of this Court, to be determined by a jury.

## COUNT 8 - ABUSE OF PROCESS [McLEOD]

51. Bailey's Construction incorporates by reference the allegations in Count 1, Count 2, Count 3, Count 4, Count 5, Count 6, and Count 7 of its Counterclaim.

52. On or about April 12, 2002, AEC maliciously obtained the issuance of a summons and third-party complaint from the Circuit Court of Washington County, Alabama in case number CV-01-109-C, and had it served on Bailey's Construction.

11

53. AEC abused the issuance of the summons and third-party complaint in that it was served on Bailey's Construction by AEC to punish, harass, and intimidate Bailey's Construction after Jack Bailey testified in the McLeod lawsuit.

54. As a proximate consequence of AEC's abuse of process, Bailey's Construction suffered damages.

55. Bailey's Construction claims punitive or exemplary damages from AEC due to the abusive nature of AEC's conduct.

WHEREFORE, PREMISES CONSIDERED, Bailey's Construction demands judgment against AEC for compensatory and punitive damages in an amount that would be in excess of the minimum jurisdictional limit of this Court, to be determined by a jury.

## COUNT 9 - ABUSE OF PROCESS [AEC v. OBE]

56. Bailey's Construction incorporates by reference the allegations in Count 1, Count 2, Count 3, Count 4, Count 5, Count 6, Count 7, and Count 8 of its Counterclaim.

57. On or about May 3, 2002, AEC and Wausau maliciously obtained the issuance of a summons and complaint from the Circuit Court of Covington County, Alabama and had it served on Bailey's Construction. The complaint was

12

transferred to the Circuit Court of Washington County, Alabama and is pending as the present case number CV-02-027B.

58.  AEC and Wausau abused the issuance of the summons and complaint in that it was served on Bailey's Construction by AEC and Wausau to punish, harass and intimidate Bailey's Construction after Jack Bailey testified in the McLeod lawsuit.

59.  As a proximate consequence of AEC's and Wausau's abuse of process, Bailey's Construction suffered damages.

60.  Bailey's Construction claims punitive or exemplary damages from AEC and Wausau due to the abusive nature of AEC's and Wausau's conduct.

WHEREFORE, PREMISES CONSIDERED, Bailey's Construction demands judgment against AEC and Wausau for compensatory and punitive damages in an amount that would be in excess of the minimum jurisdictional limit of this Court, to be determined by a jury.

### COUNT 10 - ABUSE OF PROCESS [AEC v. GENERALI]

61.  Bailey's Construction incorporates by reference the allegations in Count 1, Count 2, Count 3, Count 4, Count 5, Count 6, Count 7, Count 8 and Count 9 of its

13

Counterclaim.

62. On or about November 13, 2002, AEC and Wausau maliciously obtained the issuance of a summons and complaint from the Circuit Court of Covington County, Alabama and had it served on Bailey's Construction. The complaint was transferred to the Circuit Court for Washington County, Alabama and is pending as case number CV-03-037C.

63. AEC and Wausau abused the issuance of the summons and complaint in that it was served on Bailey's Construction by AEC and Wausau to punish, harass, and intimidate Bailey's Construction after Jack Bailey testified in the McLeod lawsuit.

64. As a proximate consequence of AEC's and Wausau's abuse of process, Bailey's Construction suffered damages.

65. Bailey's Construction claims punitive or exemplary damages from AEC and Wausau due to the abusive nature of AEC's and Wausau's conduct.

WHEREFORE, PREMISES CONSIDERED, Bailey's Construction demands judgment against AEC and Wausau for compensatory and punitive damages in an amount that would be in excess of the minimum jurisdictional limit of this Court, to be determined by a jury.

14

COUNT 11 - SLANDER

66.  Bailey's Construction incorporates by reference the allegations in Count 1, Count 2, Count 3, Count 4, Count 5, Count 6, Count 7, Count 8, Count 9, and Count 10 of its Counterclaim.

67.  In or about January, 2003, in Washington County, Alabama, AEC and/or Wausau slandered Bailey's Construction by publishing false and defamatory statements of and concerning Bailey's Construction.

68.  As a proximate consequence of AEC's and/or Wausau's slander, Bailey's Construction suffered damages.

69.  Bailey's Construction claims punitive or exemplary damages from AEC and/or Wausau due to AEC and/or Wausau publishing the defamatory statements with malice and with knowledge of the falsity of the statements or with gross and reckless disregard of the falsity of the statements.

WHEREFORE, PREMISES CONSIDERED, Bailey's Construction demands judgment against AEC and/or Wausau for compensatory and punitive damages in an amount that would be in excess of the minimum jurisdictional limit of this Court, to be determined by a jury.

## COUNT 12 - CONSPIRACY

70.  Bailey's Construction incorporates by reference the allegations in Count 1, Count 2, Count 3, Count 4, Count 5, Count 6, Count 7, Count 8, Count 9, Count 10 and Count 11 of its Counterclaim.

71.  AEC and Wausau schemed, planned, designed and conspired to commit the tortious conduct alleged in Count 1, Count 2, Count 3, Count 4, Count 5, Count 6, Count 7, Count 8, Count 9, Count 10 and Count 11 of this counterclaim.

72.  As a proximate consequence of AEC's and Wausau's conspiracy, Bailey's Construction suffered damages.

73.  Bailey's Construction claims punitive or exemplary damages from AEC and Wausau due to the intentional nature of the conduct.

WHEREFORE, PREMISES CONSIDERED, Bailey's Construction demands judgment against AEC and Wausau for compensatory and punitive damages in an amount that would be in excess of the minimum jurisdictional limit of this Court, to be determined by a jury.

16

Respectfully submitted,

McCORQUODALE & McCORQUODALE
Attorneys for Bailey's
Construction Company, Inc.

BY: _____
JOSEPH C. McCORQUODALE, III

BY: _____
CHRISTOPHER A. BAILEY

Of Counsel:

G. Kevin Howell
Turner, Onderdonk, Kimbrough & Howell, P.A.
Post Office Drawer 1389
Chatom, Alabama 36518
251-847-2237

BAILEY'S CONSTRUCTION COMPANY, INC. DEMANDS A TRIAL BY
STRUCK JURY ON ALL THE ISSUES IN THIS ACTION TRIABLE BY
JURY.

BY: _____
JOSEPH C. McCORQUODALE, III

17

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 6th day of April, 2004, served a copy of the foregoing pleading on the following by mailing the same by United States mail, properly addressed and first-class postage prepaid.

Ronald G. Davenport
Rushton, Stakely, Johnston, & Garrett, P.A.
Attorneys for AEC and Wausau
Post Office Box 270
Montgomery, Alabama 36101-0270

Thomas T. Gallion, III
Haskell, Slaughter, Young, & Gallion, L.L.C.
Attorneys for QBE
Post Office Box 4660
Montgomery, Alabama 36103-4660

William H. Brittain, II
Ball, Ball, Matthews & Novak, P.A.
Attorneys for International Assurance, Inc.
Post Office Box 2148
Montgomery, Alabama 36102-2148

E. L. McCafferty, III
Vickers, Riis, Murray & Curran, L.L.C.
Attorneys for Bailey's Construction Company, Inc.
Post Office Drawer 2568
Mobile, Alabama 36652-2568

JOSEPH C. McCORQUODALE, III

18

*PURCHASE ORDER*
ALABAMA ELECTRIC COOPERATIVE, INC.
P. O. Box 550 - Andalusia, Alabama 36420
Phone (334) 427-3456    Fax (334) 222-6367



PAGE 2 OF 5

| Date | Due Date | Vendor | Purchase Order |
|------|----------|--------|----------------|
| 05-29-2001 | 05-30-2001 (Deliver by Date) | 157 | 136518 |

Vendor: BAILEY'S CONSTRUCTION CO.
PO BOX 249

WAGARVILLE    AL    36585

Attention: JACK BAILEY

Ship To: MIKE TAYLOR
LOWMAN POWER PLANT
CARBON RD
LEROY, AL 36548

C/O: RECEIVING DEPARTMENT
Via: FRT PPD & ALLOW

Terms: NET 30 DAYS
Notice: *Collect freight bids*
*will NOT be accepted.*

| Request No. | Item | Quantity | Unit | Forth Number | Description | Unit Price | Amount |
|-------------|------|----------|------|--------------|-------------|------------|--------|
| 13838 | 1 | | EA | | TO COVER THE COST OF TRANSPORTATION TO HAUL GYPSUM FROM LOWMAN PLANT TO CEMEX CEMENT PLANT IN DEMOPOLIS, AL.  FREIGHT RATE $7.00/TON. (ESTIMATE IS 14,000 TONS)<br><br>NOTE 1:  ESTIMATED PRICING PER YOUR LETTER DATED MAY 9, 2001.<br><br>NOTE 2:  FUEL INDEX TO BE REVIEWED | | 105,000.00 |

$105,000.00

EXHIBIT "1"

```
Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602003411
Cashier ID: cstrecke
Transaction Date: 01/17/2008
Payer Name: LIGHTFOOT FRANKLIN AND WHITE
------------------------------------
CIVIL FILING FEE
 For: LIGHTFOOT FRANKLIN AND WHITE
 Case/Party: D-ALM-2-08-CV-000044-001
 Amount:       $350.00
------------------------------------
CHECK
 Remitter: LIGHTFOOT FRANKLIN AND WHITE
 Check/Money Order Num: 122009
 Amt Tendered:  $350.00
------------------------------------
Total Due:       $350.00
Total Tendered: $350.00
Change Amt:      $0.00
```

DALM208CV44-SRW

LIGHTFOOT FRANKLIN AND WHITE

THE CLARK BLDG

400 20TH STREET, NORTH

BIRMINGHAM, AL  35203

SCANNED
051708